## GIBBS v STATE

Ohio Appeals, 4th Dist., Scioto Co

Decided May 21, 1929

B F Kimble and Edgar G Miller, both of Portsmouth, for Gibbs.

Dustin W Gustin, Pros Atty, Portsmouth, for State.

Judges ALLREAD & KUNKLE (2nd Dist) and MAUCK (4th Dist) sitting.

MAUCK, J.

It is argued with much force that the verdict of guilty returned by the jury was against the manifest weight of the evidence. If this question were to be. determined by a count of the witnesses the position of the plaintiff in error would be quite sound. The testimony of the state and that of the defendant is irreconcilably contradictory. That there was a robbery is undisputed. The state produced a number of witnesses who were in the grocery store that was the scene of the holdup and these witnesses squarely and unequivocally identify Gibbs as one of the robbers. Gibbs denies his participation in the crime and undertakes to show that at the time the offense was committed, and for a short time previous and a considerable time thereafter, he was at a picture show some squares distant from the place of the robbery. In this he is sustained by numerous witnesses who with considerable particularity recite incidents in connection with their seeing him in the picture show at the tme the state claims he was engaged in the robbery. It is impossible to harmonize the testimony of these two classes of witnesses. We can see how the jury may have disbelieved some of the witnesses for the defense. It may have believed that others of these witnesses saw Gibbs at the picture show on some other night and were honestly testifying to what they thought that they knew. It happens that while the witnesses who appeared for the defense all testify to seeing Gibbs they do not testify to seeing each other. At all events the jury heard and passed upon the credibility of these witnesses after seeing them face to face and we can not from merely reading the record say that the verdict of the jury was manifestly wrong. The judgment, therefore, can not be set aside on account of the weight of the evidence.

After the evidence had been submitted and before argument the accused offered a number of special instructions with a request that they be given before argument. One of them was given, the others were not. The defendant then asked that the others be given as part of the general charge. They were not given in the form requested and it is now claimed that error resulted from the fact that they were not given at any time. To sustain this it is incumbent upon the plaintiff in error to show, first, that the charges were. sound in law and pertinent to the case, and second, that they were not given in substance in the general charge.

The first of these special charges was a definition or rather a discussion of reasonable doubt and followed the conventional lines that have been frequently followed in discussions of reasonable doubt.

The defendant was not entitled to any particular form of words in this respect and can only have just cause for complaint if the court inaccurately defined this familiar term. The court said that a reasonable doubt is an honest, reasonable uncertainty, such as may fairly and naturally arise in your minds after fairly and carefully considering all the evidence introduced upon the trial of the case. We see nothing wrong in this expression nor any substance in the other criticisms upon this phase of the court's instructions.

It is again complained that the court did not give in its general charge any instruction covering the subject matter of the defendant's special charge relating to circumstantial evidence. Granted that the charge so requested by the defendant was entirely sound, there was no occasion for giving it in this case. The state did not rely in the trial upon circumstantial evidence. As above pointed out, the only issue in the case was whether or not Gibbs was a participant in the robbery, and the testimony that he was such participant was the direct testimony of those who claimed to be eyewitnesses. While their testimony was supported by evidence of flight and other circumstances the testimony upon which conviction depended was primarily the direct testimony of eyewitnesses to the offense.

Another special charge submitted related to the good character and reputation of the defendant. Upon this phase of the case the court said in the general charge:

"The defendant has offered evidence of his reputation for peace and quiet in this case, and the court instructs you as a matter of law that it is the privilege of the defendant to offer testimony of his reputation, and the jury will consider that evidence, together with all the other evidence, for whatever bearing it may have upon the guilt or innocence of the defendant."

This was a sufficient charge so far as the reputation of the defendant was concerned, but it is claimed that this instruction did not cover all the grounds that the special instructions covered because the special charge went to the character as well as to the reputation of the defendant. In Ohio and in a very few other jurisdictions the defendant is permitted to prove not only his good reputation but his good character altho no very definite rules are laid down for proof of the latter. **State v. Dickerson, 77 OS. 34,** annotated **in 11 Ann. Cases 1189.** It was accordingly competent for the accused to prove both his reputation and charcter as to the particular traits involved in the offense for which he was indicted, and as the offense involved both violence and dishonesty he might have shown his reputation and character as related to both these qualities. If he had done so the failure of the court to charge upon his character as well as his reputation would be error. The testimony in this respect

was very meagre. On page 50 a witness testifies negatively to his good reputation. On page 56 the word character is used in the question to a witness but it clearly refers to reputation rather than to character. On page 62 a question is asked as to his reputation and the witness uses the word character in his answer but uses it as a synonym for reputation. We find no where in the record any attempt to prove a good character for the accused as distinguished from a good reputation, and for that reason the trial court was right in refusing to give any instruction relating to character.

The other asignments of error are not, in our judgment, of consequence. There is no error in the record warranting a reversal and the judgment is affirmed.

Allread and Kunkle, JJ, concur.